UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID W. KELLY and<br>JOAN L. KELLY, | : | CIVIL NO: 1:13-CV-02298 |
| | : | |
| Plaintiffs | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| WELLS FARGO BANK, N.A., | : | |
| | : | |
| Defendant | : | |
| | : | |

**REPORT AND RECOMMENDATION**

**I. Introduction.**

Currently pending is the defendant's motion to dismiss the complaint raising claims under Pennsylvania law for wrongful foreclosure, fraud, and negligence. For the reasons that follow, I recommend that the motion to dismiss be granted on the basis that the claims are barred by the gist-of-the-action doctrine. I also recommend, however, that the plaintiffs be granted leave to amend with regard to the negligence claims.

**II. Background and Procedural History.**

The plaintiffs, David and Joan Kelly, commenced this action against the defendant, Wells Fargo Bank, N.A., in the Court of Common Pleas of Perry County, Pennsylvania. The Kellys claim that Wells Fargo is liable to them under

state tort law for wrongful foreclosure, fraud, and negligence in connection with foreclosure proceedings brought by Wells Fargo against them. In September of 2013, Wells Fargo removed the case to this Court on the basis of diversity jurisdiction. Then, arguing that the Kellys' claims are barred by the doctrines of gist of the action, economic loss, and collateral estoppel, Wells Fargo moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). Wells Fargo's motion to dismiss has been fully briefed.

The following facts are taken from the allegations of the complaint and the documents attached to the complaint as well as the mortgage documents and foreclosure proceeding documents, which, although provided by Wells Fargo, are documents on which the Kellys' claims are based.[1] In October of 2004, David

---

[1] In deciding a motion to dismiss, courts generally consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Although in deciding a Rule 12(b)(6) motion, the court generally may not consider matters extraneous to the pleadings, it may consider a document that is integral to, or explicitly relied upon in the complaint, without converting the motion to dismiss into one for summary judgment. *See U.S. Express Lines, Ltd. v. Higgens*, 281 F.3d 383, 388 (3d Cir. 2002). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997)(quoting *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993)). What the rule seeks to prevent is the situation in which a "plaintiff with a legally deficient claim that is based on a particular document" is able to avoid dismissal of that claim "by failing to attach the relied upon document." *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)(citing *Pension Benefit*

Kelly obtained a loan from Washington Savings Bank (WSB) to finance property located in Perry County, Pennsylvania. In addition, Mr. Kelly executed a mortgage, which Wells Fargo later acquired. From the date the mortgage was executed until March of 2006, Mr. Kelly occupied the property, but in March of 2006, the Kellys began using the property as a rental property.

According to the Kellys, the terms of the original loan did not require an escrow for taxes and insurance, and documents provided to Mr. Kelly at or near closing confirm that no escrow was required and that he was required to make payments of only principal and interest.[2] Additionally, the Kellys assert that Mr. Kelly was not required to purchase flood insurance[3] and that each time the

---

*Guar. Corp.*, 998 F.2d at 1196). Thus, the court may consider "undisputedly authentic" documents not physically attached to the pleading, when the plaintiffs' claims are based on those documents and the defendant has attached copies of the documents to its motion to dismiss. *Id.*; *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

[2] Although Wells Fargo does not dispute that at the time of the loan closing WSB waived the escrow requirement, it contends that at the time of the loan closing, in addition to executing the mortgage, Mr. Kelly executed an Escrow Waiver Agreement (*Doc. 6-5*), which reserved WSB's right to revoke the escrow waiver for any failure to comply with terms of the agreement. The Escrow Waiver Agreement further provides that upon WSB's revocation of the escrow waiver, WSB has the right to create an escrow account for taxes and insurance.

[3] The Kellys attach to the complaint an unsigned "Flood Insurance Certification Notice" with a typewritten "x" next to the paragraph that provides that flood insurance is not required. *Doc. 1-2* at 21. Wells Fargo presents a "Flood Insurance Certification Notice," purportedly signed by Mr. Kelly, with the typewritten "x" next the paragraph that provides that flood insurance is not required crossed out and a bigger handwritten "x" next to the paragraph that provides that flood

property, which sits on a hill, was reclassified as being in a flood zone, they have successfully had the classification modified to exclude their home from the flood zone.  In 2007, Mr. Kelly transferred title to the property to himself and his wife, co-plaintiff Joan Kelly, as tenants by the entireties.

Wells Fargo acquired the mortgage in July of 2008, and shortly thereafter, it initiated a foreclosure action in state court against the Kellys based upon its inaccurate belief that the Kellys were to escrow their taxes and insurance.  At various times, Wells Fargo's representatives would attempt to pay real estate and/or school taxes on the property only to learn that the Kellys had already paid those taxes.  Also, at various times, Wells Fargo's representatives would attempt to "force place" insurance for the Kellys even though the Kellys repeatedly notified Wells Fargo that they had insurance coverage in place at all times.  The Kellys believe that Wells Fargo applied their monthly mortgage payments, which were to be principal and interest payments only, to a phantom escrow account in order to refund to itself sums it claims to have spent on behalf of the Kellys.  From August of 2007 until December of 2009, the Kellys electronically remitted their mortgage payments, but each time Wells Fargo received a payment, it attempted to reject the

---

insurance is required. *Doc. 6-3* at 2.  As we are addressing a motion to dismiss, we must accept the Kellys' version of the facts.

payment by issuing a refund check to the Kellys.[4]  The Kellys have never cashed any of those checks.

During the foreclosure proceedings, these issues came to light, and Wells Fargo agreed to review their files and provide the Kellys with an accounting of the funds they allegedly paid to third parties on behalf of the Kellys.  The Kellys believe that Wells Fargo then learned that it, in fact, had not made the payments it initially thought it had made.  Wells Fargo later withdrew the foreclosure action, but the Kellys never received an accounting of their payments and/or the actual amount they owed.  According to the Kellys, a proper accounting of their payment history would reveal that they were current on their payments until January of 2010, when Wells Fargo prevented them from making electronic payments.

During the foreclosure proceedings, individuals from Lender Processing Service (LPS), acting as agents of Wells Fargo, entered the property to examine it and change the locks in order to prepare the residence for the pending foreclosure action.  They did this nothwithstanding the fact that possession had not been granted to Wells Fargo.  During this process, agents of LPS destroyed personal property on the premises including the canvas of a Nineteenth Century oil painting, several glass items in the kitchen, three window sashes, several fluorescent tubes in

---

[4] Since the Kellys allege that Wells Fargo did not acquire the mortgage until July of 2008, this allegation, which, in part, covers a period of time before July of 2008, is not clear.

the basement, and a rental lock box, which was attached to the front railing of the property.

In February of 2012, Wells Fargo commenced a second foreclosure action in state court based on its allegation that the Kellys were in default. In March of 2012, the Kellys filed an answer in that case. The Kellys also raised counterclaims of wrongful foreclosure and negligence, and they demanded an accounting. Sustaining Wells Fargo's preliminary objections to the counterclaims, the state court dismissed the claims of wrongful foreclosure and negligence pursuant to Pennsylvania Rule of Civil Procedure 1148.[5] The court further dismissed the claim for a demand for an accounting, finding that such a request was not the proper subject of a counterclaim and could be obtained through discovery. In June of 2012, LPS damaged the Kelly's property again when individuals kicked in the front door of the property, damaging the door and door frame, in order to unlawfully gain entrance.

In April of 2013, Wells Fargo moved for summary judgment in the second foreclosure action, and the Kellys opposed that motion arguing that genuine issues

---

[5] Under Pennsylvania Rule of Civil Procedure 1148, "a defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa.R. Civ.P. 1148. According to the order dismissing the plaintiffs' counterclaims of wrongful foreclosure and negligence, the court found that Rule 1148 permits only those counterclaims that are a part of or incident to the creation of the mortgage itself.

of material fact existed with respect to whether the mortgage was in default and whether Wells Fargo had wrongfully accounted for payments they made. Despite the Kellys' opposition, on August 30, 2013, the state court granted summary judgment and entered an *in rem* judgment in foreclosure in favor of Wells Fargo and against the Kellys.

On August 6, 2013, just prior to the entry of summary judgment in favor of Wells Fargo in the second state foreclosure action, the Kellys filed this action in the Court of Common Pleas of Perry County. The Kellys claim that Wells Fargo wrongfully commenced the second foreclosure action, and as a result of that action they have been damaged by being unable to rent the property and being unable to refinance the mortgage on any of the properties that they own. The Kellys also claim that Wells Fargo engaged in fraud by failing to properly credit payments that they made, by concealing information from them, and by using information that it knew to be inaccurate to foreclose on the property. Finally, the Kellys claim that agents of Wells Fargo negligently damaged their property during both the 2008 and the 2012 foreclosure proceedings. Wells Fargo's filed a motion to dismiss, which has been fully briefed and is ripe for disposition on the merits.

**III. Discussion.**

   **A. Motion to Dismiss and Pleading Standards.**

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230. "A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the

elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that,

9

'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

### B. Gist-of-the-Action Doctrine.

Wells Fargo contends that the Kellys' claims are barred by the gist-of-the-action doctrine because any duty allegedly breached derives not from a duty imposed by law as matter of social policy, but from the terms of the mortgage. In opposition, the Kellys argue that the duties allegedly breached are founded in the larger social policy embodied in the law of torts.

The gist-of-the-action doctrine is one method Pennsylvania[6] courts use to determine whether tort claims "should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract." *Bohler-Uddeholm America, Inc. V. Ellwood Group, Inc.,* 247 F.3d 79,

---

[6] As this Court is exercising diversity jurisdiction, state substantive law applies, and the parties agree that the law of Pennsylvania is applicable. *See Erie R. Co. v. Tomkins*, 304 U.S. 64 (1938). Although the Supreme Court of Pennsylvania has not expressly adopted the gist-of-the-action doctrine, the Pennsylvania Superior Court has "operated under the assumption that the gist of the action doctrine is a viable doctrine that will eventually be explicitly adopted by [the] state's High Court." *Pediatrix Screening, Inc. v. TeleChem. Intern. Inc.*, 602 F.3d 541, 548 (3d Cir. 2010)(quoting *Reardon v. Allegheny Coll.*, 926 A.2d 477, 487 (Pa. Super. 2007)). The Third Circuit has embraced that view as well. *Id.*

103 (3d Cir. 2001). The doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." *The Brickman Group, Ltd. v. CGU Ins. Co.,* 865 A.2d 918, 927 (Pa.Super.Ct. 2004). "As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (2002). The "doctrine cannot be captured by any precisely worded test." W*illiams v. Hilton Grp. PLC*, 93 F. App'x 384, 385 (3d Cir. 2004). Rather, it calls "for a fact-intensive judgment as to the true nature of a claim." *Id.*

While it is possible that a breach of contract can give rise to an actionable tort, to be construed as a tort the wrong ascribed to the defendant must be the gist of the action with the contract being collateral. *The Brickman Group,* 865 A.2d at 927. The difference between a contract action and a tort action is that a tort action stems from the breach of duties imposed as a matter of social policy whereas a contract action stems from the breach of duties imposed by mutual consent. *Id.* "In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts and not by the larger social policies embodied by the law of torts." *Id.* (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). Accordingly, under the gist-of-the-action doctrine, a tort claim cannot be brought when the parties' obligations

are defined by the terms of a contract and not by the larger social policies embodied in tort law. *Bohler-Uddeholm,* 247 F.3d at 104.

The Kellys assert that application of the gist-of-the-action doctrine to their tort claims would be improper because they are not asserting a breach-of-contract claim against Wells Fargo. But even in the absence of an accompanying breach-of-contract claim, the gist-of-the-action doctrine precludes a tort claim where the duties allegedly breached are intertwined with contractual obligations. *See Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 552-555 (M.D. Pa. 2010). Thus, the applicability of the doctrine to the case at bar turns not on whether the Kellys are actually asserting a breach-of-contract claim, but rather on whether the duties allegedly breached are defined by the terms of a contract or by the larger social policies embodied in tort law. *See id.*

In this case, the Kellys' wrongful foreclosure and fraud claims stem from Wells Fargo's alleged failure to properly credit their monthly principal and interest payments in accordance with the parties' agreement, statements Wells Fargo made about such payments, and Wells Fargo foreclosure proceedings. In support of these claims, the Kellys attach to their complaint documents that they allege evidence the terms of the parties' agreement, including the alleged original agreement between the parties indicating that Mr. Kelly was not required to purchase flood insurance or make payments of taxes and insurance into an escrow

account.  The Kellys' allegations, as well as the documents attached to their complaint, demonstrate that Wells Fargo's obligation to credit the payments to principal and interest, instead of applying such payments to an escrow account, arises out of, and is wholly dependent upon, the terms of the mortgage agreement and related documents mutually entered into by the parties.  It follows then that the parties' dispute is defined by their contractual obligations in this regard.

Furthermore, as to the wrongful foreclosure and fraud claims, although the Kellys assert that the duty breached arises out of the larger social policy embodied within the law of torts, they have failed to identify such a duty.  Generally, a lender does not owe a fiduciary duty to a borrower. *Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 806 (E.D. Pa. 2011)("Under Pennsylvania law, a lender acts in his financial interest and does not owe a fiduciary duty to the borrower.").  As such, in the absence of the mortgage agreement between the parties, any duty to credit the Kellys' account with their monthly principal and interest payments would not exist.  Accordingly, as Wells Fargo's duty to credit the Kellys' account with their principal and interest payments is wholly dependent upon the terms of the mortgage agreement, the wrongful foreclosure[7] and fraud claims are barred by the gist-of-the-action doctrine. *See Morris v. Wells Fargo Bank N.A.,* 2:11-CV-

---

[7] Given that the claim in this case titled as a wrongful foreclosure claim is barred by the gist-of-the-action doctrine, I do not address the merits of any such claim including whether Pennsylvania even recognizes such a claim.

474, 2012 WL 3929805, at *12 (W.D. Pa. Sept. 7, 2012)(holding that breach of fiduciary duty claim based on force-placing of insurance barred by the gist-of-the-action doctrine because the parties obligations regarding the escrow account and the maintenance of flood insurance arose from the mortgage agreement); *Sarsfield*, 707 F. Supp. 2d at 555 (holding that tort claims based on the amount and servicing of a mortgage escrow account barred by gist-of-the-action doctrine).

We also conclude that, as currently pleaded, the Kellys' negligence claims are barred by the gist-of-the-action doctrine. In support of their negligence claims, the Kellys assert that LPS, acting as an agent of Wells Fargo, unlawfully entered the property during the pendency of both the 2008 and the 2012 foreclosure action and caused damage to their personal property in the home and to the home itself. As with the wrongful foreclosure and fraud claims, Wells Fargo contends that its obligations are defined by the underlying contract. It points to the following provision of the mortgage, which allows the lender to take steps to secure and protect the property in certain circumstances:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture . . . ) . . . then Lender may do and pay for whatever is reasonable and appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the

> Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. . . .

*Doc.6-1* at 9, ¶9.

This provision of the mortgage covers Wells Fargo's right to enter the property and take certain actions on the property. The entries into the home that caused the alleged damage about which the Kellys complain stemmed from Wells Fargo's contractual right to enter the property under certain circumstances. Regardless of whether the entries were proper under the mortgage, the mortgage was the source of the entries. The Kellys have not alleged the relationship of the parties at the time of the entries, *e.g.* borrower and lender, principal and agent, etc., and they have not alleged what duty of care Wells Fargo owed them that arose outside of the contract. The Kellys' conclusory allegation in the complaint that Wells Fargo owed them a duty not to damage or harm their property and their conclusory statement in their brief that Wells Fargo owed them a duty based on social policy is not sufficient. Because Wells Fargo's entries into the home stem from the provisions of the mortgage agreement and the Kellys fail to allege the basis a duty Wells Fargo owed them that arose outside of the mortgage, we

15

conclude that the negligence claims, as currently pleaded, are barred by the gist-of-the-action doctrine.[8]

**C. Leave to Amend.**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). In this case, because the Kellys' wrongful foreclosure and fraud claims are clearly barred by the gist-of-the-action doctrine, allowing the Kellys leave to amend would be futile. Although I conclude that, as pleaded, the negligence claims are also barred by the gist-of-the-action doctrine, I recommend that the Kellys be given leave to amend to clarify the basis of any duty they allege that Wells Fargo owed them with respect to the damage to the home and its contents.

**IV. Recommendations.**

Accordingly, for the foregoing reasons, it is recommended that the motion (doc. 5) to dismiss the complaint be granted and that the Kellys be granted leave to amend only as to the negligence claims.

---

[8] Because I conclude that Wells Fargo's motion to dismiss should be granted on the basis of the gist-of-the-action doctrine, I do not address Wells Fargo's arguments that the claims are also barred by the economic loss doctrine and that the wrongful foreclosure and fraud claims are barred by collateral estoppel.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of May, 2014.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge