UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID W. KELLY and          :     CIVIL NO: 1:13-CV-02298
JOAN L. KELLY,              :
                            :
          Plaintiffs        :
                            :     (Chief Judge Conner)
          v.                :
                            :     (Magistrate Judge Schwab)
WELLS FARGO BANK, N.A.,     :
                            :
          Defendant         :
                            :

## REPORT AND RECOMMENDATION

### I. Introduction.

David and Joan Kelly assert that Wells Fargo Bank, N.A. breached a

mortgage entered into by David Kelly and the predecessor of Wells Fargo and that

agents of Wells Fargo damaged some of their property when the agents entered it.

The Kellys present breach-of-contract and negligence claims. Currently pending is

Wells Fargo's motion to dismiss the amended complaint, which I recommend be

granted in part and denied in part. I recommend that the negligence claim, which

is based on events that occurred in 2008, be dismissed because it is barred by the

statute of limitations. Also, I recommend that the Court reject Wells Fargo's

contention that the breach-of-contract claims be dismissed as barred by the statute

of limitations and collateral estoppel. I recommend, however, that two of the five

breach-of-contract claims be dismissed because they fail to state a claim upon which relief can be granted.

## II. Background and Procedural History.

In August of 2013, David and Joan Kelly, husband and wife, began this action against Wells Fargo Bank, N.A. in the Court of Common Pleas of Perry County, Pennsylvania.  The Kellys claimed that Wells Fargo was liable to them under state tort law for wrongful foreclosure, fraud, and negligence in connection with foreclosure proceedings brought by Wells Fargo against them.  Asserting that the Kellys are citizens of Pennsylvania, that Wells Fargo is a citizen of South Dakota, and that the amount in controversy exceeds $75,000, Wells Fargo removed the case to this Court on the basis of diversity jurisdiction.  Then, arguing, among other things, that the Kellys' claims were barred by the gist-of-the-action doctrine, Wells Fargo moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6).  The Court granted that motion to dismiss but gave the Kellys leave to amend their negligence claim and to amend their wrongful foreclosure claim to plead it as a breach-of-contract, rather than a tort, claim.

The Kellys then filed an amended complaint.  The following facts are taken from the allegations of the amended complaint and the documents attached to the amended complaint as well as documents from the state foreclosure proceedings,

which, although provided by Wells Fargo, are documents on which the Kellys' claims are based.[1]

### A.  The Property, the Mortgage, and the Mortgage Assignments.

In October of 2004, David Kelly, the owner of property located in Marysville, Perry County, Pennsylvania obtained a $92,000 loan from Washington Savings Bank.  The terms of the loan were set forth in a note.  In addition, Mr. Kelly executed a mortgage on his property.  The mortgage identifies Washington Savings Bank as the lender and the Mortgage Electronic Registration Systems, Inc.

---

[1] In deciding a motion to dismiss, courts generally only consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Although in deciding a Rule 12(b)(6) motion, the court generally may not consider matters extraneous to the pleadings, it may consider a document that is integral to, or explicitly relied upon in the complaint, without converting the motion to dismiss into one for summary judgment. *See U.S. Express Lines, Ltd. v. Higgens*, 281 F.3d 383, 388 (3d Cir. 2002).  "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997)(quoting *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993)).  What the rule seeks to prevent is the situation in which a "plaintiff with a legally deficient claim that is based on a particular document" is able to avoid dismissal of that claim "by failing to attach the relied upon document." *Lum v. Bank of America*, 361 F.3d 217, 222  n.3 (3d Cir. 2004)(citing *Pension Benefit Guar. Corp.*, 998 F.2d at 1196).  Thus, the court may consider "undisputedly authentic" documents not physically attached to the pleading, when the plaintiffs' claims are based on those documents and the defendant has attached copies of the documents to its motion to dismiss. *Id.*; *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

(MERS), acting as a nominee for the Washington Savings Bank, as the mortgagee. The mortgage was later assigned to Washington Mutual Bank, and then it was assigned to Wells Fargo.  A written assignment, dated July 25, 2008, to Wells Fargo provides that "the transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to Assignee.  This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold." *Doc. 27-1* at 33.  The written assignment was recorded on September 2, 2008. *Id.* at 32.  The assignments of the mortgage did not change any of the terms of the mortgage other than the name of the mortgagee.

From October of 2004 until March of 2006, Mr. Kelly occupied the property, but in March of 2006, he began to use the property as a rental property. In 2007, Mr. Kelly transferred title to the property to himself and his wife, co-plaintiff Joan Kelly, as tenants by the entireties. *Doc 27-1* at 7-9.

## B.  The Escrow Waiver.

The mortgage contains an escrow provision requiring the borrower to pay into an escrow maintained by the lender amounts to cover taxes, insurance, and other assessments on the property. *Doc. 27-1* at 16. ¶3.  The mortgage also,

however, contains a provision regarding the waiver of the escrow requirement:

> Borrower shall pay Lender the Funds for Escrow Items unless
> Lender waives Borrower's obligation to pay the Funds for any
> or all Escrow Items.  Lender may waive Borrower's obligation
> to pay to Lender Funds for any or all Escrow Items at any time.
> Any such waiver may only be in writing.  In the event of such
> waiver, Borrower shall pay directly, when and where payable,
> the amounts due for any Escrow Items for which payments of
> Funds has been waived by Lender and, if Lender requires, shall
> furnish to Lender receipts evidencing such payment within such
> time period as Lender may require.  Borrower's obligation to
> make such payments and to provide receipts shall for all
> purposes be deemed to be a covenant and agreement contained
> in this Security instrument, as the phrase "covenant and
> agreement" is used in Section 9.  If Borrower is obligated to
> pay Escrow Items directly, pursuant to a waiver, and Borrower
> fails to pay the amount due for an Escrow Item, Lender may
> exercise its rights under Section 9 and pay such amount and
> Borrower shall then be obligated under Section 9 to repay to
> Lender any such amount.  Lender may revoke the waiver as to
> any or all Escrow Items at any time by a notice given in
> accordance with Section 15 and, upon such revocation,
> Borrower shall pay to Lender all Funds, and in such amounts,
> that are then required under this Section 3.

*Id.* Section 15 of the mortgage, relating to notices, provides in turn that all notices

given must be in writing. *Doc. 27-1* at 22, ¶15.

According to the Kellys, in accordance with the terms of the mortgage,

Washington Savings Bank could have required Mr. Kelly to escrow funds for taxes

and insurance, but it waived that escrow requirement.  The Kellys allege that

documents provided to Mr. Kelly at or near closing confirm that no escrow was

required and that he was required to make payments of only principal and interest

in the amount of $589.09 per month.  First, the Kellys point to an Escrow Waiver Agreement signed by Mr. Kelly. *Doc. 27-1* at 41.  That Agreement provides, in pertinent part, that the Lender waives the requirement of an escrow provided that the borrower timely pays the taxes and insurance directly and, upon request by lender, provides receipts showing that such has been paid. *Id.*  The Agreement also reserved the lender's right to establish or reestablish the requirement of an escrow account based on any failure of the borrower to comply with the terms of the Agreement or if the borrower defaults on the mortgage. *Id.*  The Kellys also point to a First Payment Notice that Mr. Kelly received at the time of closing: that notice provides that the total monthly payment is $589.09, consisting of principal and interest only. *Doc. 27-1* at 39.  Further, they point to an Initial Escrow Account Disclosure Statement, which also states that the monthly payment is $589.09, consisting of principal and interest, and which shows that no money was to be applied to an escrow in the next year. *Doc. 27-1* at 43.

The Kellys also allege that the mortgage did not require Mr. Kelly to purchase flood insurance and that each time the property, which sits on a hill, was reclassified as being in a flood zone, they successfully had the classification modified to exclude their home from the flood zone.

### C. The Mortgage Payments.

The Kellys allege that they consistently made the required mortgage payments and that from August of 2007 until December of 2009, they did so via electronic means.  But, according to the Kellys, as early as February of 2007, Wells Fargo or its predecessors began applying part of their monthly payments to an escrow account: of the Kellys' $589.09 payments, approximately $70.00 was applied to an escrow account and only $519.09 was applied to principal and interest.  As result of the diversion of that $70.00 into an escrow account, the Kellys allege that they began to fall behind on their mortgage each month by that same amount.

The Kellys also allege that at various times, Wells Fargo's representatives would attempt to pay an escrow item only to learn that the Kellys had already paid that item.  Also, at various times, Wells Fargo's representatives allegedly attempted to "force place" insurance for the Kellys even though the Kellys repeatedly notified Wells Fargo that they had insurance coverage in place at all times and there was never a lapse in coverage.

According to the Kellys, beginning in July of 2009 and continuing through December of 2009, Wells Fargo unilaterally refunded their monthly payments by issuing checks to the Kellys.  The Kellys never cashed those checks, and they allege that Wells Fargo continued to retain and enjoy the benefit of their funds

until sometime in 2013, when Wells Fargo deposited their July 2009 through December 2009 payments with the Pennsylvania Treasury.

### D.  The First Foreclosure Action.

Even though the assignment of the mortgage to Wells Fargo was not recorded until September of 2008, in May of 2008, Wells Fargo initiated a foreclosure action in the Court of Common Pleas of Perry County, alleging, erroneously according to the Kellys, that it was the legal owner of the mortgage and that the Kellys failed to make monthly mortgage payments.  Wells Fargo filed a motion for summary judgment in that foreclosure action, and the Kellys raised the issue of misapplication of the mortgage payments to an escrow account despite the waiver of the escrow requirement.  The state court denied Wells Fargo's motion for summary judgment, and Wells Fargo then withdrew that foreclosure action.  Wells Fargo did not provide the Kellys with an accounting of the application of their mortgage payments.

### E. The July 25, 2008 Entry onto the Property.

Two provisions of the mortgage allow the lender to enter the property under certain circumstances.  The first provision, paragraph 7 of the mortgage, requires

the borrower to preserve and maintain the property and provides that the lender

may inspect the property:

> Lender or its agent may make reasonable entries upon and
> inspections of the Property.  If it has reasonable cause, Lender
> may inspect the interior of the improvements on the Property.
> Lender shall give Borrower notice at the time of or prior to such
> an interior inspection specifying such reasonable cause.

*Doc. 27-1* at 18-19, ¶7.  Section 15 of the mortgage requires that notices be in

writing. *Doc. 27-1* at 22, ¶15.

The second provision, paragraph 9 of the mortgage, allows the lender to take

steps to secure and protect the property in certain circumstances:

> If (a) Borrower fails to perform the covenants and agreements
> contained in this Security Instrument, (b) there is a legal
> proceeding that might significantly affect Lender's interest in
> the Property and/or rights under this Security Instrument (such
> as a proceeding in bankruptcy, probate, for condemnation or
> forfeiture . . . ) or (c) Borrower has abandoned the Property,
> then Lender may do and pay for whatever is reasonable and
> appropriate to protect Lender's interest in the Property and
> rights under this Security Instrument, including protecting
> and/or assessing the value of the Property, and securing and/or
> repairing the Property. . . . Securing the Property includes, but
> is not limited to, entering the Property to make repairs, change
> locks, replace or board up doors and windows, drain water from
> pipes, eliminate building or other code violations or dangerous
> conditions, and have utilities turned on or off. . . .

*Doc.27-1* at 19, ¶9.

The Kellys allege that on July 25, 2008, individuals from an entity known as

LPS, acting as agents of Wells Fargo, entered their property to inspect it.  During

this process, agents of LPS allegedly damaged personal property on the premises

including the front door and door frame, the canvas of a Nineteenth Century oil painting, several glass items in the kitchen, three window sashes, several fluorescent tubes in the basement, and a rental drop box, which was attached to the front railing of the property.

According to the Kellys, Wells Fargo's entry onto their property in July of 2008 was improper because Wells Fargo was not the mortgagee at the time of the entry.  Further, the Kellys assert that, even if Wells Fargo was the mortgagee at the time, the entry onto their property was not done in accordance with the provisions of the mortgage.

## F. The Second Foreclosure Action.

In February of 2012, Wells Fargo began a second foreclosure action in state court.  In paragraph 5 of that foreclosure complaint, Wells Fargo alleged that the Kellys were in default:

> The mortgage is in default because monthly payments of principal and interest upon said mortgage due 12/01/2007 and each month thereafter are due and unpaid, and by the terms of said mortgage, upon failure of mortgagor to make such payments after a date specified by written notice sent to Mortgagor, the entire principal balance and all interest due thereon are collectible forthwith.

*See Doc. 31-2* at ¶5.  In paragraph 6 of the foreclosure complaint, Wells Fargo set forth the following amounts that the Kellys allegedly owed under the mortgage:

The following amounts are due on the mortgage as of
11/10/2011:

| Principal Balance | $88,776.93 |
|---|---|
| Interest<br>11/01/07 through 11/10/11 | $23,670.78 |
| Late Charges | $176.70 |
| Property Inspections | $435.00 |
| Escrow Deficit | $7,386.97 |
| **TOTAL** | **$120,446.38** |

*Id.* at ¶6.

In March of 2012, the Kellys filed an answer in the second foreclosure

action. *See Doc. 31-3.* They denied paragraphs 5 and 6 of the foreclosure

complaint as "conclusions of law to which no response is required." *Id.* at ¶¶5 & 6.

They further responded to paragraph 6 of the foreclosure complaint by asserting

that they had requested from Wells Fargo "a detailed summary of all transactions

relating to the mortgage," but Wells Fargo failed to produce any such summary.

*Id.* at ¶6.

Contending that they were not required to escrow money for taxes and

insurance, that Wells Fargo incorrectly applied their monthly payments to a

phantom escrow account, and that they were current on their payments until such

time as Wells Fargo began to reject and return their payments, the Kellys also

raised counterclaims of wrongful foreclosure and negligence, and they demanded

an accounting. *Id.* Sustaining Wells Fargo's preliminary objections to the

counterclaims, the state court dismissed the claims of wrongful foreclosure and

negligence pursuant to Pennsylvania Rule of Civil Procedure 1148.[2] *See Doc. 31-4.*
The court further dismissed the demand for an accounting, finding that such a
request was not the proper subject of a counterclaim and that an accounting could
be obtained through discovery. *Id.*

In April of 2013, Wells Fargo moved for summary judgment in the second
foreclosure action arguing that the Kellys effectively admitted all of the allegations
of the foreclosure complaint. *Doc. 31-5* at 157.   In that regard, Wells Fargo
asserted that although the Kellys purported to deny paragraphs 5 and 6 of the
foreclosure complaint, their denials were general denials, which are insufficient to
raise a genuine issue of material fact and which must be considered admissions. *Id.*
at 157-159.   The Kellys opposed Wells Fargo's motion for summary judgment
arguing that genuine issues of material fact existed with respect to whether the
mortgage was in default and whether Wells Fargo had wrongfully accounted for
payments they made. *Doc. 31-6.*   More specifically, they disputed that their denials
to paragraphs 5 and 6 of the foreclosure complaint were general denials that
functioned as admissions. *Id.* at 5.   Instead, they argued, paragraphs 5 and 6 of the

---

[2] Under Pennsylvania Rule of Civil Procedure 1148, "a defendant may plead a
counterclaim which arises from the same transaction or occurrence or series of
transactions or occurrences from which the plaintiff's cause of action arose." Pa.R.
Civ.P. 1148.  According to the order dismissing the Kellys' counterclaims of
wrongful foreclosure and negligence, the court found that Rule 1148 permits only
those counterclaims that are a part of or incident to the creation of the mortgage
itself. *See Doc. 31-4*

foreclosure complaint were conclusions of law and their denials to those

paragraphs were proper. *Id.*

Despite the Kellys' opposition, on August 30, 2013, the state court granted

Wells Fargo's motion for summary judgment and entered an *in rem* judgment in

foreclosure in favor of Wells Fargo and against the Kellys. *Doc. 31-7.*  The Kellys

appealed that judgment.  The Pennsylvania Superior Court rejected the Kellys'

argument that they did not admit to failing to make payments due under the

mortgage:

> . . . [The Kellys] have responded to [Wells Fargo]'s
> allegation by denying it as a conclusion of law.  [The Kellys]
> argue, however, that they have not admitted to a failure to make
> the payments due because their denials were made pursuant to
> Pa.R.C.P. 1029(d) and that such denials are not deemed
> admissions.  Rule 1029(d) states, "[a]verments in a pleading to
> which no responsive pleading is required shall be deemed to be
> denied." Pa.R.C.P. 1029(d).  While it is true that mere
> conclusions of law require no denial because they are deemed
> to be denied, the averments by [Wells Fargo] are more than just
> conclusions of law as they also include assertions of fact that
> require specific denials.
>
> A careful review of [Wells Fargo]'s complaint shows that
> paragraph 5 contains both conclusions of law and assertions of
> fact.  The assertion that [the Kellys] were in default of their
> mortgage is indeed a conclusion of law to which [Wells Fargo]
> needs factual support and to which [the Kellys] need not reply.
> However, following that statement, [Wells Fargo] makes
> factual assertions that [the Kellys] failed to make timely
> payments starting in December 2007.  Such assertions of fact
> are well within the knowledge of the mortgagor.  Therefore,
> [the Kellys] cannot rest on their answer and assertion that
> [Wells Fargo']s averment was a conclusion of law.  Because
> [the Kellys] would be the only party, aside from [Wells Fargo],

to have the specific knowledge to refute the assertion, [the Kellys] have failed to properly respond in their answer pursuant to Pa.R.Civ.P. 1029(c).

Our case law has made it clear that a party cannot rely on [R]ule 1029(c) to excuse the failure to properly admit or deny factual allegations.  Such a failure by [the Kellys] to properly admit or deny the facts asserted constitutes an admission.  Therefore, [the Kellys] have admitted to the facts set forth in paragraph 5 of the complaint.

We now turn to [the Kellys'] answer to paragraph 6 of the complaint.  If as [the Kellys] assert in paragraph 6 of their answer that [Wells Fargo] stated a conclusion of law, it is puzzling why [they] would need more factual information—the request for a "detailed summary of all transactions relating to the mortgage for the property."  In *Piehl v. City of Philadelphia,* 930 A.2d 607, 616 (Pa.Cmwlth. 2007), the Commonwealth Court encountered a similar situation.  There, defendant wrote in his answer that plaintiff's averment was a conclusion of law to which no response was required and at the same time requested that the plaintiff show factual support of the conclusion. *See id.*  The Commonwealth Court concluded that defendant's answer amounted to an admission under Pa.R.Civ.P. 1029(b) because defendant's demand for strict proof, notwithstanding the conclusion of law, did not relieve him of the burden to file a proper responsive pleading. *See id.*

Here, [the Kellys] have responded to [Wells Fargo]'s averment by stating that it was a conclusion of law to which no response was required and [that they] wanted more information.  As in *Piehl,* such an answer by [the Kellys] amounts to an improper responsive pleading under 1029(b) and is deemed an admission.  Therefore, [the Kellys] have admitted to paragraph 6 of the complaint.

Because [the Kellys]' answers to the complaint serve as admissions, they have admitted to the failure to make the necessary mortgage payments.  As such, the trial court did not abuse it discretion in granting summary judgment.

*Doc. 31-8* at 6-8 (some case citations omitted).  In a footnote, the Superior Court

stated that it "need not address [the Kellys'] argument that the new matter remains

unresolved because they failed to raise that argument in their Pa.R.A.P. 1925(b)

statement.  As such, that argument is waived on appeal pursuant to Pa.R.A.P.

1925(b)(4)(vii)." *Id.* at 8, n.1.

The Kellys filed a petition for allowance of appeal with the Pennsylvania

Supreme Court. *See Doc. 31-9.*  At the time the Kellys filed their amended

complaint in this case, their petition for allowance of appeal in the Pennsylvania

Supreme Court was still pending, but, on September 23, 2014, that court denied the

Kellys' petition for allowance of appeal and their motion to stay a sheriff's sale of

the property. *See Doc. 35-1* at 2.

### G.  Accounting of the Mortgage Payments.

The escrow provision of the Mortgage provides that "Lender shall give to

Borrower, without charge, an annual accounting of the Funds as required by

RESPA." [3] *Doc. 27-1* at 17, ¶3. It further provides that "[i]f there is a surplus of

Funds held in escrow, as defined under RESPA, Lender shall account to Borrower

for the excess funds in accordance with RESPA." *Id.*  Section 15 of the Mortgage,

the notice provision of the mortgage, further provides that "[i]f any notice required

by this Security Instrument is also required under Applicable Law, the Applicable

---

[3]  RESPA refers to the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–
2617.

Law requirement will satisfy the corresponding requirement under this Security Instrument." *Doc. 27-1* at 22, ¶15.

The Kellys allege that they questioned the manner in which their monthly mortgage payments were being applied and that in connection with both foreclosure proceedings, they requested an accounting of the mortgage payments. Wells Fargo attached a purported loan history to their summary judgment motion in the second foreclosure action. *See Doc. 27-1* at 65-94. The Kellys contend, however, that much of the information in that history is not decipherable and that that history did not provide complete information. According to the Kellys, the loan history provided by Wells Fargo also details improper escrowing of items as early as 2006. They allege that they were entitled to an accounting of the application of their mortgage payments pursuant to RESPA, 12 U.S.C. § 2605(e).

## H. Claims in the Amended Complaint.

In their amended complaint, the Kellys denominate their first cause of action as breach of contract. Although set forth in one count, the Kellys actually claim that Wells Fargo breached the mortgage in five ways. First, they contend that Wells Fargo breached the mortgage by filing the first foreclosure action in May of 2008, before it was assigned the mortgage. In this regard, the Kellys contend that

16

Wells Fargo breached its duty to bring a foreclosure action only when it had proper standing.

Second, the Kellys claim that Wells Fargo breached the mortgage by applying a portion of their payments to an escrow account without first providing them written notice revoking the waiver of the escrow requirement.

Third, the Kellys contend that although they made their mortgage payments, Wells Fargo improperly applied a portion of their payments to an escrow account, instead of applying their entire payments to principal and interest.  They claim that Wells Fargo breached the mortgage by accelerating their payment obligations and bringing the foreclosure actions even though they had not breached the mortgage.

Fourth, the Kellys contend that they were entitled to an accounting of the application of the mortgage payments pursuant to RESPA.  Given that this claim is set forth as a breach-of-contract claim, we construe the claim to be that Wells Fargo breached by the mortgage by failing to provide a proper accounting of the application of their mortgage payments in accordance with RESPA.

Fifth, the Kellys claim that Wells Fargo breached the mortgage by entering the subject property in July of 2008.  According to the Kellys, agents of Wells Fargo entered the property without any right, privilege, license, or authority to do so since Wells Fargo was not the mortgagee at the time of the entry.  Further, the Kellys contend, in the alternative, that even if Wells Fargo was the mortgagee at

the time, the entry onto their property was not proper pursuant to Section 7 of the mortgage because neither Wells Fargo nor its agents provided them with the written notice required under that section of the mortgage before conducting an interior inspection.  The Kellys also contend that entry onto their property was not proper pursuant to Section 9 of the mortgage because they were in compliance with all provisions of the mortgage, they had not abandoned the property, and there was no legal proceeding the might significantly affect the lender's interest in the property.

The Kellys allege that they suffered damage as a result of Wells Fargo's breach of the Mortgage: they allege that they were unable to rent the property as a result of the foreclosure proceedings resulting in losses of more than $75,000; they alleged that they incurred losses of approximately $2,500 in connection with the damage caused by Wells Fargo's agents to the property; and they allege that they incurred counsel fees in connection with the foreclosure proceedings, that the foreclosure proceedings adversely affected their credit to a point where they were unable to refinance mortgages on other properties that they own, and that ultimately judgment was entered against them in the second foreclosure action and they lost the subject property.

In addition to claiming that Wells Fargo breached the mortgage, the Kellys claim that Wells Fargo was negligent in connection with the damage to their property in July of 2008.

Wells Fargo filed a motion to dismiss the amended complaint. The parties fully briefed that motion, and the motion is ripe for disposition on the merits. For the reasons discussed below, we recommend that the motion to dismiss be granted in part and denied in part.

## III. Discussion.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, must draw all reasonable inferences from the complaint, and must construe the complaint in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).  A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902,

906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can

prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of*

*Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more

than mere legal labels and conclusions.  Rather, it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  In practice, consideration of the legal sufficiency of a complaint

entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify
> allegations that, 'because they are no more than conclusions,
> are not entitled to the assumption of truth.'  Finally, 'where
> there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556

U.S. at 675 & 679).


**B. The Negligence Claim is Barred by the Statute of Limitations.**

In support of their negligence claim, the Kellys assert that LPS, acting as an

agent of Wells Fargo, unlawfully entered the property in July of 2008 and caused

damage to their personal property.  Wells Fargo contends that the negligence claim

is barred by the statute of limitations as well as by the gist-of-the-action and

economic-loss doctrines.  Because we conclude that the negligence claim is barred

by the stature of limitations, we need not, and do not, consider the gist-of-the-action and the economic-loss doctrines.

Although the statute of limitations is an affirmative defense, a court can dismiss a complaint based on the statute of limitations when "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994).  But "'[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Schmidt v. Skolas,*  770 F.3d 241, 249 (3d Cir. 2014)(quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)(quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Pennsylvania law provides that a two-year statute of limitations applies to negligence claims. *See* 42 Pa. Cons.Stat. § 5524(7).  The limitations period generally "begins to run as soon as a right to institute and maintain suit arises." *Schmidt,* 770 F.3d at 250.  Here, the Kellys are complaining about agents of Wells Fargo damaging their property in July of 2008.  Yet they did not begin this action in until August of  2013.  Thus, absent tolling, the negligence claim is barred by the statute of limitations.

Although the general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises, "Pennsylvania law recognizes that 'in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured.'" *Haugh v. Allstate Ins. Co.,* 322 F.3d 227, 231 (3d Cir. 2003)(quoting *Crouse v. Cyclops Industries,* 745 A.2d 606, 611 (Pa. 2000)).   Under Pennsylvania law, the statute of limitations may be tolled by the discovery rule. *Mest v. Cabot Corp.,* 449 F.3d 502, 510 (3d Cir. 2006).   "The discovery rule tolls the accrual of the statute of limitations when a plaintiff is unable, *"despite the exercise of due diligence,* to know of the injury or its cause." *Id.* (emphasis in original)(quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).   "Under the rule, even if a plaintiff suffers an injury, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" *Id.* (quoting *Debiec v. Cabot Corp.,* 352 F.3d 117, 129 (3d Cir. 2003)).   But "[f]or the statute of limitations to run, a plaintiff need not know the 'exact nature' of his injury, as long as it objectively appears that the plaintiff 'is reasonably charged with the knowledge that he has an injury caused by another.'" *Id.* at 510-11 (quoting *Ackler v. Raymark Indus., Inc.,*551 A.2d 291, 293 (Pa.Super.Ct. 1988)); *see also Brawner v. Educ. Mgmt. Corp.,* 513 F. App'x 148,

151 (3d Cir. 2013)(stating that knowledge of every fact necessary to succeed on a claim is not required to trigger the accrual period).  While the plaintiff generally bears the burden of showing that the discovery rule tolls the statute of limitations, the Court "may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt,* 770 F.3d at 251.

The Kellys do not appear to dispute that the negligence claim is barred by the statute of limitations.  They do not explicitly address Wells Fargo's contention that the negligence claim is barred by the statute of limitations.  Rather, they suggest that they are conceding the statute of limitations issue as to the negligence claim but not as to the breach- of-contract claim as to the July 2008 entry on the property:

> Defendant also argues Plaintiffs' claims against LPS should be dismissed under both theories; breach of contract and negligence.  This is not dispositive as Plaintiffs have also alleged sufficient facts to support a breach of contract claim against LPS by alleging there was a contract (the Kelly Mortgage) in place [Doc. No. 27 at 8-13¶¶]; there was a breach of duties imposed by that contract [Doc. No. 27 at 143-171¶¶] and there were damages that resulted [Doc. No. 27 at 172-174¶¶] from the breach all within the applicable statute of limitations as discussed below.

*Doc. 33* at 15.  The Kellys then proceed to discuss the statute of limitations only as to the contract claims. *Id.* at 15-18.  In sum, the Kellys do not suggest that they did not know about the damage to their property at, or shortly after, the time the

damage occurred in 2008, and they do not argue that their negligence claim is not barred by the statute of limitations.  Accordingly, the negligence claim should be dismissed because it is barred by the statute of limitations.

## C.  Breach of Contract Claims.

The Kellys claim that Wells Fargo breached the mortgage in five ways: (1) by filing the first foreclosure action without proper standing because it had not yet been assigned the mortgage; (2) by applying a portion of their payments to an escrow account without first providing them written notice revoking the waiver of the escrow requirement; (3) by accelerating their payment obligations and bringing the foreclosure actions even though they had not breached the mortgage; (4) by failing to provide a proper accounting of the application of their mortgage payments; and (5) by entering the subject property in July of 2008.  Wells Fargo argues that the breach-of-contract claims should be dismissed for a variety of reasons.  It contends that claims 1, 2 & 5 are barred by the statute of limitations.  It also contends that claims 1, 2, 4, and 5 fail to state a claim upon which relief can be granted.  It further contends that the contract claims are barred by collateral estoppel.  We address each of these arguments.

**1.  The Contract Claims Should Not Be Dismissed Based on the Statute of Limitations.**

Citing 42 Pa.C.S.A. § 5525(a)(8),[4] which generally provides for a four-year statute of limitations for contract claims, Wells Fargo contends that contract claims 1, 2 & 5 are barred by the statute of limitations.  The Kellys respond that the mortgage is an instrument that was signed under seal, so, they contend, 42 Pa.C.S.A. § 5529(b), which provides for a twenty-year statute of limitations for actions on sealed instruments, applies.  In reply, Wells Fargo argues that Section 5529(b)(1) does not apply because Washington Savings Bank, the original lender, did not sign the mortgage under seal.  We ordered the Kellys to file a surreply brief addressing that argument by Wells Fargo, and the Kellys did so.

"The practice of affixing seals to writings originated at common law to give legal effect to promises and agreements." *Osprey v. Portfolio,*  67 A.3d 749, 756 n. 7 (Pa. 2013).  "Prior to enactment of the Judicial Code, which became effective on June 27, 1978, there was no statute of limitations applicable to an instrument under seal." *Gordon v. Sanatoga Inn, Inc.*,  632 A.2d 1352, 1352  (Pa. Super. Ct.

---

[4] 42 Pa.C.S.A. § 5525(a)(8) provides that "[a]n action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter" must be commenced within four years.  The referenced "paragraph (7)" refers to 42 Pa.C.S. A. § 5525(a)(7), which deals with "negotiable or nonnegotiable bond[s], note[s] or other similar instrument[s] in writing."  Neither Wells Fargo nor the Kellys contend that Section 5525(a)(7) applies in this case.

1993).  Rather, "[t]here was only a presumption of payment after twenty (20) years." *Id.*  42 Pa.C.S.A. § 5529(b), enacted as part of the Judicial Code, provides that "an action upon an instrument in writing under seal must be commenced within 20 years."

A threshold question here is whether the mortgage in this case is an "instrument in writing under seal" under Section 5529(b)(1).  Wells Fargo does not contend that the mortgage does not qualify as an instrument in writing, and it has been held that Section 5529(b)(1) may apply to mortgages. See *In re Estate of Snyder*, 13 A.3d 509, 513 (Pa. Super. Ct. 2011)("Our review of the certified record before us reveals that each of the pertinent instruments in this case [which included bonds, warrants, and mortgages] is properly classified as 'an instrument in writing under seal[.]'").

The mortgage in this case is on a standard form and was signed by Mr. Kelly.  The word "Seal" is in parenthesis at the end of the signature line where Mr. Kelly signed his name. *See Doc. 27-1* at 25.  "When a party signs a contract which contains [the] pre-printed word "SEAL," that party has presumptively signed a contact under seal." *Beneficial Consumer Discount  v. Daily,* 644 A.2d 789, 790 (Pa. Super. Ct. 1994).  Wells Fargo does not dispute that Mr. Kelly signed the contract under seal.  Rather, it argues that Section 5529(b)(1) does not apply because Washington Savings Bank, the original lender, did not sign the mortgage

27

under seal.[5]  In effect, Wells Fargo contends that although the mortgage may be an instrument under seal as to the Kellys, it is not an instrument under seal as to Wells Fargo.  Accepting this proposition would make the determination whether Section 5529(b) applies depend on which party is bringing the action on the mortgage.  In other words, a 20-year statute of limitations would apply to a claim on the mortgage made by Wells Fargo against the Kellys, but only a four-year statute of limitations would apply to a claim by the Kellys against Wells Fargo.

Under common law, an instrument may be deemed an instrument under seal as to one party, but not as to another party. *See generally* Restatement (Second) of Contracts § 107 (1981)("Where a grantee or promisee accepts a sealed document which purports to contain a return promise by him, he makes the return promise.  But if he does not sign or seal the document his promise is not under seal, and whether it is binding depends on the rules governing unsealed contracts.").  But here we are dealing with a statute, and the statute—Section 5529(b)(1)—provides that a twenty-year statute of limitation applies to an "action upon an instrument in writing under seal."  The statute does not contain any indication that its applicability depends on which party to the instrument brings the action.

_____

[5] In fact, neither Washington Savings Bank nor MERS signed the mortgage except that there is a signature of an agent for the mortgagee under a "Certificate of Residence" that is attached to the mortgage. *Doc. 27-1* at 25-26.  Other than that, only Mr. Kelly signed the mortgage.  Wells Fargo does not argue that the lack of a signature on the mortgage on behalf of Washington Savings Bank or MERS renders the mortgage unenforceable.

Wells Fargo has not presented any case law holding that Section 5529(b)(1) should be interpreted as it contends. The Kellys, on the other hand, present a case—*Paslowski v. Standard Mortg. Corp.*, 1999 U.S. Dist. LEXIS 15787 (W.D.Pa. 1999)—on point in support of their contention that Section 5529(b)(1) applies even though the original lender did not sign the mortgage. In that case, the Paslowskis sued their mortgage company based on the administration of a mortgage loan and raised, among other claims, a breach-of-contract claim. *Id.* at *5. The mortgage company contended that that claim was barred by either a four-year or six-year statute of limitations, but the Paslowskis contended that the twenty-year statute of limitation under Section 5529(b)(1) applied. *Id.* at *10-11. The *Paslowski* court concluded that Section 5529(b)(1) applied even though the mortgage company did not sign the instruments at issue in that case, a mortgage and bond. The court specifically rejected the same argument presented by Wells Fargo in this case, *i.e.,* that Section 5529(b)(1) does not apply because the mortgage company did not sign the instruments issue:

> Defendant seeks to avoid this result by arguing that the mortgage and bond cannot be "under seal" with respect to defendant because it did not sign the agreements. However, the Pennsylvania statute does not condition its applicability upon which party is bringing suit or seeking to reap the benefit of the extended limitations period. The statute merely indicates that a twenty-year limitation period will apply to all "actions upon" a contract under seal, and it is clear to the court that the claim set

forth at Count I of the complaint constitutes an action upon a
contract under seal.

*Id.* at *14-15. [6]

We agree with the *Paslowski* court that Section 5529(b)(1) does not

condition its applicability upon which party is bringing suit.  Thus, we reject Wells

Fargo's contention that the breach-of-contract claims in this case should be

dismissed on the basis of the statute of limitations.

### 2. Two of the Breach-of-Contract Claims Fail to State a Claim Upon Which Relief Can Be Granted.

"Under Pennsylvania law, '[a] breach of contract action involves: (1) the

existence of a contract; (2) a breach of a duty imposed by the contract; and

(3) damages.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013)(quoting

---

[6] In addition to *Paslowski*, the Kellys also cite *Christopher v. First Mut. Corp.*, No.
CIV.A. 05-01149, 2006 WL 166566, at *5 (E.D. Pa. Jan. 20, 2006), a case in
which the court refused to dismiss a breach-of-contract claim concluding that the
mortgage at issue was an contract under seal and thus subject to the twenty year
statute of limitations of Section 5529(b)(1).  In that case, the court stated that the
mortgage there contained the words "IN WITNESS WHEREOF, I hereunto set my
hand and official seal" and the word "seal" by each of the witness's signature.  The
Kellys attach to their surreply brief the mortgage purportedly at issue in the
*Christopher* case, and like the mortgage in this case, that mortgage was only signed
by the borrower.  But the Kellys do not assert where they obtained that mortgage
or how the Court in this case could consider such a document outside the
pleadings.  Moreover, the court in *Christopher* did not explicitly discuss the issue
of whether the mortgage was under seal even though only the borrower signed the
mortgage.

*Braun v. Wal–Mart Stores, Inc.,* 24 A.3d 875, 896 (Pa.Super.Ct. 2011)).  Wells

Fargo contends that the amended complaint fails to state a claim upon which relief

can be granted as to four of the five breach-of-contract claims.  We address each of

those four claims, and, as discussed below, we conclude that two of the claims fail

to state a claim upon which relief can be granted.

### a.  The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted Based on Wells Fargo Filing the First Foreclosure Action Without Standing.

Wells Fargo contends that the Kellys' claim that it breached the mortgage by

filing the first foreclosure action without proper standing because it had not yet

been assigned the mortgage fails to state a claim upon which relief can be granted.

Wells Fargo argues that it did, in fact, have standing to bring the first foreclosure

action.  In that regard, it asserts that it was the legal owner of the mortgage at the

time even though the assignment of the mortgage to it had not yet be recorded

because under Pennsylvania law an assignment of a mortgage does not have to be

recorded to be effective, nor does it have to be recorded before a party can bring a

foreclosure action.  Wells Fargo cites case law supporting those propositions, and,

in their brief in opposition, the Kellys do not appear to dispute those propositions.

In any event, Wells Fargo contends that the Kellys cannot state a claim that it

breached the mortgage by filing the first foreclosure action without proper standing

because it simply makes no sense to claim that it breached a contract to which the

Kellys allege Wells Fargo was not a party at the time of the alleged breach. We agree, and by not arguing in their brief in opposition that the amended complaint states a claim in this regard, the Kellys appear to so concede. Accordingly, the claim that Wells Fargo breached the mortgage by filing the first foreclosure action without proper standing because it had not yet been assigned the mortgage should be dismissed.

### b.  The Claim based on the Revocation of the Escrow Waiver Should Not Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.

Wells Fargo contends that the Kellys' claim that it breached the mortgage by applying a portion of their payments to an escrow account without first providing them written notice revoking the waiver of the escrow requirement should be dismissed. Wells Fargo argues that the Kellys cannot establish such a claim because, contrary to their allegations, it did provide notice of the revocation of the escrow waiver, and in support of that contention, it points to a November 7, 2007 Escrow Disclosure Statement, which the Kellys attached to their amended complaint as an exhibit. *See Doc. 27-1* at 62-63. This Escrow Disclosure Statement sets forth that the current monthly payment is $815.41, which consists of $589.09 in principal and interest and $226.32 for escrow. *Id.* at 62. The Statement further sets forth that the new monthly payment for the coming year will be $659.28, which consists of  $589.09 for principal and interest and $70.19 for

escrow. *Id.*  The Statement further sets forth the projected escrow deposits and distributions, and it projects that there will be an escrow surplus of $780.10. *Id.* The Statement also contains an escrow account history that shows that there were some payments into an escrow account in March, April, July, September, and October of 2007. *Id.* at 63.  Wells Fargo asserts that the 2007 Escrow Disclosure Statement constituted the annual escrow accounting statement required under RESPA as well as written notice under the mortgage of the revocation of the escrow waiver.  Thus, according to Wells Fargo, it provided the Kellys written notice of the revocation of the escrow waiver.

The Kellys respond that the November 7, 2007 Escrow Disclosure Statement does not constitute written notice of the revocation of the escrow waiver.  They point out that the Statement does not use the word "revoke" or any derivative of, or synonym for, that word.  They also note that the Statement is dated November 7, 2007, but it provides of history of escrow payments for earlier in 2007.  Thus, they assert, the Statement cannot be written notice of the revocation of the escrow waiver since it appears that the escrow waiver was revoked earlier than November 7, 2007.

The November 7, 2007 Escrow Disclosure Statement does not establish that the Kellys received written notice of the revocation of the escrow waiver before portions of their payments were applied to an escrow account.  And, at this stage of

the proceedings, we must accept as true the Kellys' allegations in the amended complaint that they did not receive written notice of the revocation of the escrow waiver before amounts from their mortgage payments were applied to an escrow account.   Accordingly, the Kellys' claim that Wells Fargo breached the mortgage by failing to provide written notice of the revocation of the escrow waiver before applying a portion of their payments to an escrow account should not be dismissed.[7]

---

[7]  Although Wells Fargo argues in its opening brief that it provided written notice of the revocation of the escrow waiver and the November 2007 escrow statement appears to have been sent by Wells Fargo, in the argument section of its reply brief regarding the statute of limitations, Wells Fargo asserts that there is no allegation in the amended complaint that prior to the assignment of the mortgage to Wells Fargo in 2008 that it was the owner of the mortgage such that it had a contractual obligation to provide written notice of the escrow revocation to the Kellys. *See Doc. 34* at 6.  As this argument was raised for the first time in a reply brief, we will not address it because the Kellys have not had the opportunity to respond to it. *See Bernard v. E. Stroudsburg Univ.*, No. 3:09-CV-00525, 2014 WL 4093069, at *4 (M.D. Pa. Aug. 18, 2014)(stating that the court is under no obligation to consider an argument raised for the first time in a reply brief); *Corbeil v. Cahill*, No. 1:13-CV-1323, 2014 WL 1234488, at *4 (M.D. Pa. Mar. 25, 2014)(stating that "new arguments raised for the first time in a reply brief may be disregarded by the court"); *United States v. Martin,* 454 F.Supp.2d 278, 281 n. 3 (E.D.Pa.2006) (noting that "[a] reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues").  In this regard, we note that although we *sua sponte* ordered the Kellys to file a surreply brief, our order regarding the surreply brief was limited to the statute-of-limitations issue.

### c. The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted Based on Wells Fargo's Failure to Provide a Proper Accounting of the Application of the Kellys' Payments.

The Kellys contend that they were entitled to an accounting of the application of the mortgage payments pursuant to RESPA.  Given that this claim is set forth as a breach-of-contract claim, we construe the claim to be that Wells Fargo breached the mortgage by failing to provide a proper accounting of the application of their mortgage payments in accordance with RESPA.

Wells Fargo contends that the amended complaint fails to state a breach-of-contract claim based on the failure to provide an accounting.  First, Wells Fargo asserts that there is no requirement under the mortgage for it to provide such an accounting.  In this regard, it asserts that other than the obligation to provide an annual escrow accounting there is no duty under the mortgage to provide an accounting of the loan payment history.  Wells Fargo further asserts that the Kellys have not alleged that it failed to provide an annual escrow accounting, but rather, according to the Kellys, it failed to providing an accounting of the loan history generally.  Wells Fargo concludes that, because no such obligation exists under the mortgage, the claim fails.

The Kellys have not responded to Wells Fargo argument in this regard at all, and, thus, they appear to have abandoned this claim.  In any event, since they have not pointed to a provision of the mortgage that Wells Fargo allegedly breached by

not providing the accounting, we recommend that this breach-of-contract claim be dismissed.[8]

### d.  The Contract Claim Based on the July 2008 Entry onto the Property Should Not Be Dismissed.

The Kellys claim that Wells Fargo breached the mortgage by entering the subject property in July of 2008.  In connection with that claim, the Kellys allege that agents of Wells Fargo entered the property without any right, privilege, license, or authority to do so since Wells Fargo was not the mortgagee at the time of the entry.  As Wells Fargo argued in connection with the claim that it filed the first foreclosure action without standing, Wells Fargo asserts that, in fact, it was the mortgagee at the time.  The Kellys, however, plead, in the alternative, that even if Wells Fargo was the mortgagee at the time, the entry onto their property was not proper pursuant to Section 7 of the mortgage because neither Wells Fargo nor LPS provided them with the written notice required under that section of the mortgage before conducting an interior inspection.  The Kellys also contend that entry onto their property was not proper pursuant to Section 9 of the mortgage because they

---

[8] Wells Fargo also contends that the Kellys do not allege that they  submitted a qualified written request to the mortgage servicer under RESPA, and, thus, they fail to state an actionable claim under that Act.  We do not address that contention because we have construed the claim to be a breach-of-contract claim, rather than a claim under RESPA.  Even if the Kellys intended the claim to be an independent claim under RESPA, they have abandoned that claim by failing to address it in their brief in opposition to the motion to dismiss.

were in compliance with all provisions of the mortgage, they had not abandoned the property, and there was no legal proceeding that might significantly affect the lender's interest in the property.  Wells Fargo has not addressed these allegations. Accordingly, we conclude that the breach-of-contract claim based upon the July 2008 entry onto the property should not be dismissed.

### 3.  The Contract Claims Should Not Be Dismissed At This Time Based on Collateral Estoppel.

In addition to its other arguments in support of dismissal of the breach-of-contract claims, Wells Fargo contends that the contract claims are barred by collateral estoppel because in granting summary judgment for it in the second foreclosure action, the state court determined that Wells Fargo had established its claim for foreclosure, including its right to enforce the mortgage, the Kellys' default, and the amount the Kellys owed under the mortgage.  Wells Fargo contends that these are the very factual issues that form the basis of the Kellys' claims in this case.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Claim preclusion and issue preclusion "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."

*Allen v. McCurry*, 449 U.S. 90, 94 (1980).  When applied by a federal court to give preclusive effect to a state court judgment, claim preclusion and issue preclusion also promote "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.* at 96.

The Full Faith and Credit Statute provides that state judicial proceedings are entitled to the "same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738.  In accordance with that statute, a federal court looks to state law to determine the preclusive effect of a prior state judgment. *Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n*, 767 F.3d 335, 350-51 (3d Cir. 2014).  Here, we are called upon to determine the preclusive effect of a judgment of a Pennsylvania court, and so Pennsylvania preclusion law applies.

Under Pennsylvania law, we use a five-prong test to determine whether issue preclusion, also known as collateral estoppel, applies.  *Id.* at 351.  Issue preclusion applies when:

> (1) the issue decided in the prior case is identical to the one presented in the later action;
> (2) there was a final adjudication on the merits in the prior case;
> (3) the party against whom issue preclusion is asserted was a party or in privity with a party in the prior case;
> (4) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior case; and
> (5) the determination in the prior case was essential to the judgment.

*Id.* The party asserting issue preclusion bears the burden of proving each of these elements. *Dommel Properties, LLC v. Jonestown Bank & Trust Co.*, No. 1:11-CV-02316, 2014 WL 3385100, at *15 (M.D. Pa. July 9, 2014).

The fifth element—that the determination of the issue in the prior case was essential to the judgment in that case—"is rooted in principles of fairness." *Id.* Preclusion should apply only as to issues that the parties actually deemed important, not merely incidental, to the case. *Id.* "This requirement also ensures that preclusive effect is not given to issues that did not receive close judicial attention, or that were unappealable by virtue of being incidental to a decision." *Id.* As such, the Court must determine "whether the parties as well as the trier of fact recognized the issue as necessary to the first judgment." *Id.*

"Some earlier Pennsylvania cases apply the same issue preclusion test but without the fifth prong regarding whether the prior determination was essential to the judgment." *Metro. Edison,* 767 F.3d at 351, n.20. The parties in this case continue to rely on the four-prong test; they do not even acknowledge the requirement that the determination in the prior case must be essential for issue preclusion to apply. Given that the parties have not briefed all the elements of issue preclusion, we conclude that it would be premature to rule on issue preclusion at this time. Thus, we recommend that the contract claims not be dismissed at this time based on issue preclusion.

## IV.  Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the motion (doc. 30) to dismiss the amended complaint be granted in part and denied in part. It is recommended that the negligence claim be dismissed.  It is also recommended that the breach-of-contract claims based on Wells Fargo filing the first foreclosure action without standing and based on Wells Fargo failing to provide a proper accounting of the mortgage payments be dismissed.  It is recommended that the motion to dismiss be otherwise denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 27th day of January, 2015.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge