## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID W. KELLY and JOAN L. KELLY,** | : | **CIVIL ACTION NO. 1:13-CV-2298** |
| | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WELLS FARGO BANK, N.A.,** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

Presently before the court in the above-captioned action is the report (Doc. 40) of Magistrate Judge Susan E. Schwab, recommending the court grant in part and deny in part a motion (Doc. 30) to dismiss filed by Wells Fargo Bank, N.A. ("Wells Fargo"). Judge Schwab recommends the court grant Wells Fargo's motion as to plaintiffs' negligence claim and two components of their breach of contract claim, but deny the balance of the motion given the parties' mutual failure to fully address Wells Fargo's collateral estoppel defense. Wells Fargo objects to the report to the extent Judge Schwab deemed its collateral estoppel argument to be unfit for judicial review. For the reasons that follow, the court will sustain Wells Fargo's objection.

## I.   Background

### A.   Factual Background[1]

On October 21, 2004, plaintiff David W. Kelly secured a mortgage in the amount of $92,000 on property located in Marysville, Pennsylvania.  (See Doc. 27 ¶¶ 4, 8-9).  The mortgage identifies the lender as Washington Savings Bank, FSB, ("WSB") and WSB's nominee as Mortgage Electronic Registration Systems, Inc. ("MERS").  (Id. ¶¶ 8, 10).  The mortgage was assigned to Washington Mutual Bank, and thereafter to defendant Wells Fargo Bank, N.A. ("Wells Fargo").  (Id. ¶¶ 10-13). David W. Kelly later executed a deed transferring ownership of the subject property to himself and his wife, plaintiff Joan L. Kelly (collectively, the "Kellys").  (Id. ¶ 7, Ex. B).  The mortgage contains an escrow provision, requiring the borrower to pay into an escrow account maintained by the lender amounts to cover taxes, insurance, and other regular property assessments.  (See id., Ex. C at 5).  The mortgage also permits waiver of the escrow requirement and mandates that any such waiver by the lender be noticed in writing to the borrower.  (Id.)  According to the Kellys, WSB executed an escrow waiver at closing, and the Kellys' monthly payment of $589.09 consisted of principal and interest only.  (Id. ¶¶ 21, 24-25, 27, 29).

---

[1] In accordance with the standard of review for a motion to dismiss, the court will assume the facts of the complaint to be true and present them in the light most favorable to plaintiffs as the nonmoving party.  See infra at II(A).  Except as noted, the court's discussion of the factual background derives from the magistrate judge's report, familiarity with which is presumed.

The Kellys allege that they consistently satisfied the required monthly mortgage payments. (Id. ¶ 50). From August of 2007 until December of 2009, the Kellys made monthly mortgage payments of $589.09 by electronic means. (Id. ¶ 51). According to the Kellys, beginning in July of 2009, Wells Fargo would accept the electronic payment but subsequently refund the payment by check. (Id. ¶¶ 52-54). The Kellys did not cash any of the refund checks issued by Wells Fargo. (Id. ¶ 55). The Kellys also allege that, as early as February of 2007, Wells Fargo and its predecessors began to escrow approximately $70.00 of their monthly mortgage payment. (Id. ¶ 72). According to plaintiffs, as a result of Wells Fargo's erroneous diversion of $70.00 per month from principal and interest payments to the escrow account, plaintiffs "were falling behind on the mortgage each month by that same amount of money." (Id. ¶ 75).

In May of 2008, Wells Fargo initiated a foreclosure action against the Kellys in the Court of Common Pleas of Perry County, Pennsylvania. (Id. ¶¶ 58-62). In its complaint, Wells Fargo alleged that the Kellys were in default of their mortgage by failing to make full monthly payments due in December of 2007 and thereafter. (Id. ¶ 62). When the state court denied Wells Fargo's motion for summary judgment, Wells Fargo withdrew its initial complaint. (Id. ¶¶ 64-65). Plaintiffs aver that, on July 25, 2008, Wells Fargo's agent, an entity identified as "LPS," entered their property in order to inspect it without authority to do so and without providing written notice to plaintiffs. (See id. ¶¶ 143-154). The Kellys allege that, during the

course of their inspection, LPS employees damaged personal property, including a nineteenth century oil painting, window sashes, and a door frame.  (Id. ¶ 159).

On February 24, 2012, Wells Fargo initiated a second foreclosure action, again alleging that the Kellys were in default of their mortgage obligations by failing to make monthly payments due in December of 2007 and thereafter.  (Id. ¶¶ 66-67). In pertinent part, Wells Fargo alleged:

> 5. The mortgage is in default because monthly payments of principal and interest upon said mortgage due 12/01/2007 and each month thereafter are due and unpaid, and by the terms of said mortgage, upon failure of mortgagor to make such payments after a date specified by written notice sent to Mortgagor, the entire principal balance and all interest due thereon are collectible forthwith.
>
> 6. The following amounts are due on the mortgage as of 11/10/2011:

| | |
|---|---|
| Principal Balance | $88,776.93 |
| Interest | $23,670.78 |
| 11/01/07 through 11/10/11 | |
| Late Charges | $176.70 |
| Property Inspections | $435.00 |
| Escrow Deficit | $7,386.97 |
| TOTAL | $120,446.38 |

(Doc. 31, Ex. 2 ¶¶ 5-6).  The Kellys filed an answer on March 22, 2012, denying the above-quoted paragraphs as "conclusions of law to which no response is required." (Doc. 31, Ex. 3 ¶¶ 5-6).  The Kellys further responded that they had requested from Wells Fargo "a detailed summary of all transactions relating to the mortgage," but that Wells Fargo failed to produce any summary.  (Id. ¶ 6).

In April of 2013, Wells Fargo again moved for summary judgment, arguing that the Kellys had admitted all relevant allegations in the foreclosure complaint. (Doc. 31, Ex. 5 at 157).  Specifically, Wells Fargo asserted that the Kellys' purported denials of paragraphs 5 and 6 were general denials which, under Pennsylvania law, are insufficient to raise a genuine issue of material fact and must be considered admissions.  (See id. at 157-59).  The Kellys responded that genuine issues of fact existed with respect to whether their mortgage was in default and that the denials of paragraphs 5 and 6 were permissible responses to improper conclusions of law in Wells Fargo's complaint.  (See Doc. 31, Ex. 6 at 5-7).  On August 30, 2013, the Court of Common Pleas for Perry County granted Wells Fargo's motion and entered an *in rem* judgment in foreclosure in favor of Wells Fargo and against the Kellys.  See Wells Fargo Bank, N.A. v. Kelly, No. CV-2012-194 (Pa. Ct. Com. Pl. Aug. 30, 2013).

The Kellys appealed to the Superior Court of Pennsylvania.  On June 25, 2014, the Superior Court issued a memorandum opinion affirming the trial court's judgment.  See Wells Fargo Bank, N.A. v. Kelly, No. 1700 MDA 2013 (Pa. Super. Ct. June 25, 2014) (non-precedential).  The court specifically found that the Kellys failed to deny those portions of paragraphs 5 and 6 containing factual averments, and as such, deemed those facts to be admitted.  See id. at 4-7 (citing First Wis. Trust Co. v. Strausser, 653 A.2d 688, 694 (Pa. Super. Ct. 1995); Piehl v. City of Phila., 930 A.2d 607, 616 (Pa. Commw. Ct. 2007)).  In other words, the court held that the Kellys had denied Wells Fargo's conclusion of law—that the mortgage was in default—but

admitted the attendant factual allegations supporting that conclusion.  <u>See id.</u>  As a consequence, the court concluded that the Kellys "have admitted to the failure to make the necessary mortgage payments" and affirmed the trial court's foreclosure judgment in favor of Wells Fargo.  <u>Id.</u> at 7.  On September 23, 2014, the Supreme Court of Pennsylvania denied the Kellys' petition for allowance of appeal.  <u>See Wells Fargo Bank, N.A. v. Kelly</u>, 99 A.3d 927 (Pa. 2014).

**B.  Procedural History**

On August 6, 2013, while the foreclosure action was still pending, the Kellys commenced the above-captioned litigation in the Court of Common Pleas for Perry County, Pennsylvania.  In their initial complaint, the Kellys asserted claims against Wells Fargo for wrongful foreclosure, fraud, and negligence.  (<u>See</u> Doc. 1-2 at 5-15). Wells Fargo timely removed the matter to this court on September 3, 2013, (Doc. 1), and thereafter moved to dismiss pursuant to Rule 12(b)(6), asserting that the Kellys' claims are barred by the doctrines of gist of the action, economic loss, and collateral estoppel.  (Doc. 5).  On May 21, 2014, Magistrate Judge Schwab issued a report and recommendation (Doc. 20), finding that the Kellys' fraud and wrongful foreclosure claims were barred by the gist of the action doctrine and subject to dismissal.  (<u>Id.</u> at 10-14).  Judge Schwab determined that the negligence claim was similarly barred, but recommended leave to amend as that claim was potentially curable.  (<u>See id.</u> at 14-16).  On July 10, 2014, the court issued an order adopting Judge Schwab's report

and dismissing the Kellys' complaint with leave to file a curative amended pleading within fourteen (14) days. (See Doc. 26).

On July 23, 2014, the Kellys filed their now-operative amended complaint. (Doc. 27). The Kellys assert a five-fold breach of contract claim in Count I, asserting that Wells Fargo breached the mortgage by: (1) filing the first foreclosure action in May of 2008 before it was assigned the mortgage; (2) applying a portion of their monthly payments to an escrow account without providing notice of revocation of the escrow waiver; (3) accelerating their payment obligations and commencing foreclosure proceedings absent any breach by the Kellys; (4) failing to provide an accounting of their loan history in accordance with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; and (5) entering the property without proper notice. (Id. ¶¶ 85-174). In Count II, the Kellys assert a negligence claim relating to the July 2008 property entry. (Id. ¶¶ 175-218).

Wells Fargo moved to dismiss the amended complaint on August 8, 2014. (Doc. 30). In its brief, Wells Fargo asserts three principal arguments: first, that the Kellys' claims are barred by the four (4) year statute of limitations governing contract claims; second, that they are barred by the doctrine of collateral estoppel; and third, that the Kellys fail to state a claim for which relief may be granted. (See Doc. 31 at 9, 12-24). The Kellys oppose Wells Fargo's motion, asserting that neither collateral estoppel nor the statute of limitations preclude their claims. (See Doc. 33 at 6, 18-19). The Kellys specifically argue that a twenty (20) year limitations period

governs any claims arising under their mortgage, because the mortgage was signed under seal. (See id.)  Wells Fargo vigorously opposed this position in a reply brief, (see Doc. 34 at 3-6), and, per Judge Schwab's directive, (see Doc. 38), the Kellys filed a sur-reply specific to the statute of limitations issue. (See Doc. 39).

###    C.    Report & Recommendation

Magistrate Judge Schwab issued a second report (Doc. 40) on January 27, 2015, recommending the court grant in part and deny in part Wells Fargo's motion. Judge Schwab first observes that the two-year limitations period applicable to personal injury claims bars the Kellys' claim for negligence. (See Doc. 40 at 21-25). As to the Kellys' contract claims, Judge Schwab concludes that the mortgage is "an instrument in writing under seal" and is thus governed by a twenty-year limitations period. (Id. at 26-30).  Judge Schwab then opines that, timeliness notwithstanding, two of the contract claims fail Rule 12 scrutiny.  First, regarding the Kellys' claim that Wells Fargo did not have standing to bring the first foreclosure action in May of 2008 because the assignment to Wells Fargo was not yet recorded, Judge Schwab notes that the assignment became effective on the date of assignment, not the date of recording.  (Id. at 31-32).  Second, Judge Schwab concludes that the Kellys have abandoned their claim for failure to provide a loan history and that, to the extent they persist in that claim, the mortgage established no such duty.  (See id. at 35-36).

Turning to the balance of the Kellys' breach of contract claims, Judge Schwab opines that the parties' failure to fully develop their collateral estoppel

arguments precludes application of that doctrine at this juncture. (See id. at 37-39). Citing a recent decision of the Third Circuit Court of Appeals, Metropolitan Edison Co. v. Pennsylvania Public Utility Commission ("Met-Ed"), 767 F.3d 335 (3d Cir. 2014), Judge Schwab concludes that the parties' failure to brief the fifth element of the collateral estoppel analysis rendered any determination of that issue premature. (See id. at 37-39 (citing Metro. Edison Co., 767 F.3d at 350-51). Judge Schwab thus recommends that the court dismiss the Kellys' negligence claim and two segments of their contract claim, but deny the balance of Wells Fargo's motion. (Id. at 40).

## II.   Standard of Review

### A.   Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion to dismiss, the district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mutual Auto. Ins., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items

9

appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the court should separate the factual and legal elements of a claim; well-pleaded facts are accepted as true, while mere legal conclusions must be disregarded. Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 579 (quoting Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a

10

complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002);

Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000)).

### B.     Magistrate Judge's Recommendation

When a party objects to a magistrate judge's report and recommendation,

the court undertakes a *de novo* review of the contested portions of the report.  See

Behar v. Pa. Dep't of Trans., 791 F. Supp. 2d 383, 389 (M.D. Pa. 2011) (citing Sample

v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); 28 U.S.C. § 636(b)(1)(c)).  In this

regard, Local Rule of Court 72.3 requires written objections to "specifically identify

the portions of the proposed findings, recommendations, or report to which

objection is made and the basis for those objections."  LOCAL RULE OF COURT 72.3;

see also Behar, 791 F. Supp. 2d at 389 (citing Shields v. Astrue, No. 07-417, 2008 WL

4186951, at *6 (M.D. Pa. Sept. 8, 2008)).  The court will review the uncontested

portions of the magistrate judge's report for "clear error on the face of the record."

Cruz v. Chater, 990 F. Supp. 375, 376-78 (M.D. Pa. 1998).

**III.  Discussion**[2]

Wells Fargo objects solely to the magistrate judge's determination that the parties' mutual failure to brief the fifth element of the collateral estoppel doctrine precludes dismissal of the Kellys' claims.  (See Doc. 42 at 8).  In determining that the preclusion inquiry is not properly before the court, Judge Schwab relies on the Third Circuit Court of Appeals' recent opinion in Met-Ed, wherein the court enumerated a five-element test for issue preclusion under Pennsylvania law:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party . . . against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

Met-Ed, 767 F.3d at 351 (citing Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005)).  Importantly, however, the court also observed that other Pennsylvania decisions "apply the same issue preclusion test but *without the fifth prong* regarding whether the prior determination was essential to the judgment." Id. at 351 n. 20 (citing Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996) (emphasis

---

[2] Neither party objects to Judge Schwab's recommendation that the court dismiss the Kellys' negligence claim as untimely and the standing and accounting contractual claims for failure to state a claim.  The court finds no clear error on the face of the record as to these recommendations and will adopt the same.  See FED. R. CIV. P. 72(b), advisory committee notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); see also Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (holding that failure to object to a portion of the magistrate judge's report may result in forfeiture of *de novo* review).

added)).  In fact, after acknowledging the existence of an elusive fifth element, this court applied a four-prong test as recently as January of this year.  <u>See</u>, <u>e.g.</u>, <u>Nat'l Collegiate Athletic Ass'n v. Corbett</u>, ___ F. Supp. 2d ___, 2015 WL 196434, at *5 (M.D. Pa. 2015) ("Some Pennsylvania courts have imposed a fifth condition: (5) that the determination of the issue was essential to the judgment in the prior action.") (citing <u>Met-Ed</u>, 767 F.3d at 350-51).

The Kellys respond that the Third Circuit's decision in <u>Met-Ed</u> now controls, and that the court must deny Wells Fargo's objection.[3]  The law of issue preclusion, however, is hardly as settled as the Kellys allege.  <u>Compare</u> <u>Jones v. United Parcel Service</u>, 214 F.3d 402, 405 (3d Cir. 2000) (citing <u>Rue v. K-Mart Corp.</u>, 713 A.2d 82 (Pa. 1998) as support for four-prong test) <u>with</u> <u>Kiesewetter</u>, 889 A.2d at 50-51 (citing <u>Office of Disciplinary Counsel v. Duffield</u>, 644 A.2d 1186, 1189 (Pa. 1994) (applying five-prong test four years before <u>Rue</u> was decided)).  Notably, the <u>Met-Ed</u> court did not conclusively predict that the Pennsylvania Supreme Court will adopt the five-

---

[3] The Kellys also assert that Wells Fargo's objections are untimely.  In this regard, the Kellys cite Local Rule 72.3, requiring that objections to a magistrate judge's report be filed within fourteen (14) days of service of same, <u>see</u> LOCAL RULE OF COURT 72.3, and Federal Rule of Civil Procedure 6, regarding computation of time for filing motions and papers, <u>see</u> FED. R. CIV. P. 6(a).  The Kellys contend that Wells Fargo's February 13, 2015 objection (Doc. 41) to Judge Schwab's January 27, 2015 report (Doc. 40) is thus untimely by three (3) days.  This argument, however, does not account for the electronic service exception of Federal Rule 6(d), which provides an additional three (3) days for a party to act when service is made, *inter alia*, by electronic means.  <u>See</u> FED. R. CIV. P. 6(d).  The court thus rejects the Kellys' timeliness argument.

prong test going forward—the decision simply noted inconsistencies in application

of issue preclusion jurisprudence. See Met-Ed, 767 F.3d at 351 & n.10.

Wells Fargo directs the court to a recent decision by the Honorable Stewart

Dalzell of the Eastern District of Pennsylvania for guidance. See Byars v. State

Farm Mut. Auto. Ins. Co., No. 13-6452, 2015 WL 158798 (E.D. Pa. Jan. 12, 2015). The

Byars case arose from a motor vehicle accident: in separate actions, plaintiff John

Byars ("Byars") sued both the uninsured driver who caused the accident, and State

Farm, his automobile insurance company, for uninsured motorist benefits. Id. at

*2-3. State Farm removed the benefits action to the District Court for the Eastern

District of Pennsylvania, where the case was stayed pending a decision with respect

to the uninsured driver in state court. Id. at *3. When the driver failed to answer

the complaint, the state court entered default judgment against him and, following a

bench trial, assessed damages in favor of Byars in the amount of $50,000. Id. Judge

Dalzell then lifted the stay of the federal action, and after a period of discovery, the

Byars parties filed competing motions for summary judgment. See id. The parties

disputed whether the federal court was bound by the state court's $50,000 damages

determination in Byars' favor. Id. at *3-4.

The Byars court applied the four-prong test of Shaffer v. Smith, 673 A.2d 872

(Pa. 1996) in concluding that collateral estoppel bound the district court to the state

court's damages assessment. However, pertinent to the matter *sub judice*, Judge

Dalzell observed that whether a four-prong or five-prong test governed his analysis

14

was of no moment.  See Byars, 2015 WL 158798, at *4 n.2 (observing that some but "not all" Pennsylvania courts include "an additional fifth factor").  Judge Dalzell held, relying on the Third Circuit's decision in Witkowski v. Welch, 173 F.3d 192 (3d Cir. 1999), that:

> Whether there are four or five formal elements to the doctrine is not of consequence, nor is it for us to decide. In any event, the doctrine is essentially the same under either analysis.  Even with just the four formal elements, clearly there must be a nexus between the first two.  In other words, the identical issue must have been necessary to final judgment on the merits.  We will therefore use the four-part test from Shaffer.

Byars, 2015 WL 158798, at *4 n.2 (quoting Witkowski, 173 F.3d at 203 n.15) (internal quotation marks omitted).  Judge Dalzell's *ratio decidendi* is persuasive, and the court will similarly apply the four-prong test, fully briefed by the parties, to the instant matter.[4]

Wells Fargo contends that collateral estoppel bars the Kellys' contractual claims stemming from the 2008 and 2012 foreclosure actions, the escrow payments, and acceleration of amounts due under the mortgage.  Specifically, Wells Fargo maintains that the facts pertinent to—and dispositive of—the Kellys' claims were conclusively decided in the state court action.  There is no dispute that on August

---

[4] In their opposition papers, the Kellys attack Wells Fargo's continued reliance on the four-prong issue preclusion test, asserting that a "cursory reading" of the Met-Ed decision reveals that Pennsylvania courts have long applied a five-prong collateral estoppel test.  (See Doc. 43 at 7-8).  The court notes that the Kellys themselves relied on the four-prong test in opposing defendants' motion to dismiss, (see Doc. 33 at 15-19), and only advocated the five-prong iteration after Judge Schwab issued her report and recommendation.

30, 2013, a state court entered summary judgment in foreclosure in favor of Wells

Fargo and against the Kellys, see Wells Fargo Bank, N.A. v. Kelly, No. CV-2012-194

(Pa. Ct. Com. Pl. Aug. 30, 2013), and that the superior court affirmed that judgment

on June 25, 2014, see Wells Fargo Bank, N.A. v. Kelly, No. 1700 MDA 2013 (Pa.

Super. Ct. June 25, 2014) (non-precedential).  The dispute is whether, and to what

extent, those decisions have preclusive effect against plaintiff's instant breach of

contract claims.  This determination tasks the court to examine the specific factual

findings of the state courts.

   In its memorandum opinion rejecting the Kellys' appellate arguments, the

Superior Court held that the Kellys' failure to properly deny the factual allegations

underlying Wells Fargo's foreclosure complaint entitled Wells Fargo to summary

judgment.  See Wells Fargo, No. 1700 MDA 2013, at 4-7.  The appellate court refused

to overturn the trial court's judgment in Wells Fargo's favor, concluding that the

Kellys effectively admitted that they "failed to make timely payments starting in

December 2007," and that they "fail[ed] to make the necessary mortgage payments"

as outlined in Wells Fargo's complaint, entitling Wells Fargo to a judgment in

foreclosure.  Id.  The state court judgments conclusively establish that the Kellys

failed to make timely mortgage payments and that Wells Fargo was entitled to

enforce, and seek foreclosure under, the mortgage.  See id.

   Those exact factual findings are fatal to the bulk of the Kellys' instant

contract claims.  For example, the Kellys' claim that Wells Fargo breached the

mortgage by seeking foreclosure in 2008 is plainly refuted by the trial court's finding, and the Superior Court's confirmation, that the Kellys defaulted on their mortgage as early as December of 2007.  See Wells Fargo, No. 1700 MDA 2013, at 2, 5-6.  Similarly, the Kellys' contention that Wells Fargo inappropriately applied escrow payments, resulting in an escrow deficit, is diametrically inconsistent with the state court's conclusion that the Kellys admitted to all amounts due and owing.  See id.  And the Kellys' claim that Wells Fargo could not accelerate their payment obligations and commence proceedings against them—because the Kellys did not breach the mortgage—is foreclosed by the state court's finding that the Kellys did in fact breach the mortgage agreement.  See id.  The state court's conclusive judgment entirely erodes the factual basis of plaintiff's breach of contract claims.  The court rejects the Kellys' position that the claims before the court do not turn on facts "identical" to those conclusively found by the state court.

The balance of the Kellys' argument is likewise without merit.  The Kellys' maintain that the underlying judgment was not granted on the merits of the matter, "but rather legal formalities," (see Doc. 33 at 16), specifically the operation of the Pennsylvania Rules of Civil Procedure, which require courts to deem improper denials to be admissions.  See PA. R. CIV. P. 1029(b) ("Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication.  A general denial or a demand for proof . . . shall have the effect of an admission.").  The Kellys cite no authority supporting their position

that a decision based on Rule 1029(b) admissions is not entitled to preclusive effect. (See Doc. 33 at 17-18).  To the contrary, case law refutes this proposition.  In <u>Select Portfolio Servicing, Inc. v. Kleish</u>, No. 2273 EDA 2007 (Pa. Super. Ct. Sept. 26, 2008), for example, the Superior Court of Pennsylvania upheld judgment in foreclosure in favor of a lender based on plaintiff's failure to deny crucial allegations in the foreclosure complaint, notwithstanding plaintiff's contemporaneous allegations of a lender breach.  See <u>Kleish</u>, No. 2273 EDA 2007, at 13-14.  The Third Circuit later granted the decision preclusive effect in a federal court proceeding challenging the foreclosure, rejecting the plaintiff's argument that the state court judgment was obtained by "flouting the Pennsylvania Rules of Civil Procedure" and "enforcing an invalid mortgage agreement," and noting that those very arguments were implicitly rejected by the state court ruling.  See <u>Kliesh v. Select Portfolio Servicing, Inc.</u>, 419 F. App'x 268, 271 (3d Cir. 2011) (holding that issue preclusion bars claims sounding in wrongful foreclosure when state court entered summary judgment in foreclosure and appellate court affirmed that judgment).  For the same reasons, this court rejects the Kellys' argument that the state court ruling is not entitled to preclusive effect.[5]

---

[5] The Kellys also argue that because they "continue to pursue their appeal rights surrounding the Court of Common Pleas' granting of summary judgment," they have not had a full and fair opportunity to litigate the issue.  In the interim since the Kellys raised this argument, (see Doc. 33 at 18), the Supreme Court of Pennsylvania denied the Kellys' petition for allowance of appeal.  See <u>Wells Fargo Bank, N.A. v. Kelly</u>, 99 A.3d 927 (Pa. 2014).  The Kellys have thus fully exhausted their opportunity to litigate these issues within the Pennsylvania courts.

In a final attempt to save their claims, the Kellys assert that the state court lacked subject matter jurisdiction over the underlying foreclosure, voiding the entire chain of adverse state court decisions.  The Kellys raise this argument for the first time in response to defendants' objections.  (See Doc. 43 at 9-12).  Specifically, the Kellys ask the court to consider the Superior Court's recent decision in Wells Fargo Bank, N.A. v. Spivak, 104 A.3d 7 (Pa. Super Ct. 2014).  The Kellys assert that Spivak retroactively divests state courts of subject matter jurisdiction over the underlying mortgage foreclosure action.

In Spivak, the Superior Court reversed the trial court's grant of a foreclosure judgment in favor of a lender when the lender did not send a second notice of intent to foreclose prior to initiating a second foreclosure action.  See id. at 9-10.  The court concluded that a lender must "send a new Act 6 notice . . . prior to commencing [a] second foreclosure action . . . ."  Id. at 10.  The Kellys assert that Wells Fargo, in the underlying foreclosure action, failed to send a second notice of intent to foreclose, and that the state court is, by retroactive application of Spivak, divested of subject matter jurisdiction.  The court rejects this position.  The Kellys did not challenge the trial court's jurisdiction when those proceedings were underway, nor did they raise the issue on appeal.  Moreover, the Kellys cite no authority for the proposition that Spivak invalidates, *post factum*, any Pennsylvania foreclosure judgment that does not comport with its new interpretation of the statutory notice requirements.

(<u>See</u> Doc. 43 at 11-12).  The court declines to adopt the Kellys' broad and unfounded interpretation of <u>Spivak</u> to invalidate findings of state trial and appellate courts.

In any event, the Kellys waived this argument by failing to raise it before the magistrate judge in the first instance.  <u>See</u> <u>Kern v. Schuylkill Intermediate Unit 29</u>, No. 3:08-CV-1601, 2010 WL 3632664, at *2 (M.D. Pa. Sept. 13, 2010) (deeming claim to be waived when not raised before the magistrate judge) (citing <u>Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.</u>, 26 F.3d 375, 398 (3d Cir. 1994); <u>Jiminez v. Barnhart</u>, 47 F. App'x 684, 685 (3d Cir. 2002)); <u>Hubbard v. Pleasant Valley Sch. Dist.</u>, No. 3:03-CV-797, 2006 WL 42093, at *3 (M.D. Pa. Jan. 6, 2006) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.") (quoting <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)). For all of these reasons, the court rejects the Kellys' argument that <u>Spivak</u> impacts upon its collateral estoppel analysis.

IV.     **Conclusion**

Collateral estoppel requires the court to give preclusive effect to the state court's underlying mortgage foreclosure decisions, to "not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as the bulwark of the federal system." Allen v. McCurry, 449 U.S. 90, 95-96 (1980).  In the matter *sub judice*, these considerations dictate that the court dismiss those breach of contract claims which seek to attack collaterally the state court's underlying foreclosure judgment.  Hence, the court will sustain Wells Fargo's objection to the magistrate judge's report.[6]  An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 25, 2015

---

[6] Wells Fargo observes that the Kellys' breach of contract claim stemming from the June 2008 property entry does not immediately appear to be subject to issue preclusion because no facts pertaining to that inspection were found by the state courts.  (See Doc. 44 at 2 n.3).  The court agrees and will remand this claim to Magistrate Judge Schwab for further proceedings.